Paul Sala, State Bar #11693
Michael A. Jones, State Bar #27311
**ALLEN, SALA & BAYNE, PLC**
1850 N. Central Ave., #1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: psala@asbazlaw.com
mjones@asbazlaw.com

Proposed Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

| In re: | CHAPTER 11 |
|---|---|
| REALTY EXECUTIVES, INC., | Case No. 2-11-bk-12497-RJH |
| Debtor. | **EMERGENCY MOTION FOR ORDER AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL** |

Realty Executives, Inc., debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor"), by and through undersigned counsel, hereby files the *Emergency Motion for Order Authorizing the Debtor's Use of Cash Collateral* ("Motion"), pursuant to Bankruptcy Code §§ 361 and 363(c), and Bankruptcy Rules 2002, 4001 and 9014. The Motion seeks Court approval and authorization for the Debtor's immediate interim use of cash collateral to satisfy the Debtor's ordinary and necessary operating expenses as set forth in the budget ("Budget") attached hereto as **Exhibit "A"**. The Debtor requests that the Court set an expedited hearing on this Motion to approve the use of cash collateral on an emergency basis. Moreover, the Debtor requests that the Court set a final hearing on the Motion to consider the extended use of cash collateral.

The Debtor has met with Johnson Bank, the holder of the first-position liens in the Debtor's assets, and believes that Johnson Bank will agree to the requested use of its cash collateral. This Motion is supported by the accompanying Memorandum of Points and Authorities.

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought herein are Bankruptcy Code §§ 102, 105, 361, and 363(c), and Bankruptcy Rules 2002, 4001 and 9014.

## II. BACKGROUND

### A. The Debtor

1. On April 30, 2011 ("Petition Date"), the Debtor filed its voluntary petition under Chapter 11 of the United States Bankruptcy Code.

2. Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to manage its property and assets as debtor-in-possession. No trustee or examiner has been appointed in the Debtor's Chapter 11 case.

3. The Debtor is a franchisee of Realty Executives International, Inc. Realty Executives International, Inc. is the franchisor and is not a party to this proceeding. The Debtor is headquartered in Phoenix, Arizona. The Debtor was founded in October of 1965 with an innovative concept that allowed Realtors to be paid full commissions for their closed real estate transactions while paying a monthly "desk fee" to the company. For 20 years after its inception, the Debtor's company grew steadily and focused on hiring only the most productive and experienced Realtors in Maricopa County. The Company motto was "no beginners, no kidding."

4. In 1985, the Debtor's focus became more widespread with the launch of new agent trainee programs, the development of vendor partnerships, and creation of more than 60 different commission fee plans. By 2007, the company grew to more than 1,800 Sales Executives (agents) who were members of Realty Executives, Inc., in the Phoenix area.

5. With this growth in Sales Executives (agents) also came a significant increase in brokerage overhead and expenses. Most notably, the company's operations grew to 17 branch offices and employed more than 120 non-agent staff members.

6. In the spring of 2007, the real estate market significantly decreased nationally and in the Metropolitan Phoenix market, and the Debtor was unable to maintain its profitability. At the same time, the Debtor continued to renew and expand office leases and greatly outspent its competitors from a marketing and advertising perspective. As a result, the Debtor was unable to maintain its profitability.

7. In October of 2009, the Debtor put in place a restructuring plan aimed at right sizing the Debtor's operations and overhead so that the Debtor could return to profitability and its founding principles. In December of 2010, a specific restructuring plan was adopted by the Board to eliminate costs, improve operations, and restructure executive fee plans. By mid-April of 2011, it became clear that the Debtor could not complete the necessary restructuring plan, which required significant office lease terminations and modifications, without the help of a Chapter 11 filing.

8. The Debtor has an immediate need for cash in order to pay employee wages and salaries, and otherwise operate its business. To meet its obligations, the Debtor requires authority to use its existing cash and cash generated in the continued operation of its business.

**B.      Johnson Bank Debt Structure**

9. As of the Petition Date, the Debtor owed Johnson Bank approximately $400,000.00 in indebtedness ("Pre-Petition Obligation") pursuant to: (i) The Business Loan Agreement between Debtor and Johnson Bank, dated December 29, 2010 ("Loan Agreement"), and (ii) the Promissory Note made by the Debtor in favor of Johnson Bank, dated December 29, 2010 as amended ("Note") (collectively, the Loan Agreement and the Note are referred to herein as the "Loan Documents").

10. To secure the Pre-Petition Obligation, the Debtor granted Johnson Bank a security interest in all of the Debtor's interest in and to the following property ("Collateral"): All inventory, equipment, accounts, chattel paper, instruments, letter-of-credit rights, documents, investment property, other rights to payment and performance, general intangibles,

///

-3-

and all products and proceeds of or relating to the foregoing property as these terms are defined in Article 9 of the Uniform Commercial Code enacted in the State of Arizona ("Arizona UCC").

11. Johnson Bank perfected its security interest in the Collateral existing on the Petition Date ("Pre-Petition Collateral") by filing financing statement #200915670363 ("Financing Statement"), with the Arizona Secretary of State on January 7, 2009. Accordingly, Johnson Bank holds a first priority, valid, enforceable and perfected security interest in the Pre-Petition Collateral and proceeds thereof, including any cash in accounts and deposits derived from the Pre-Petition Collateral, which constitutes cash collateral (collectively "Cash Collateral") pursuant to 11 U.S.C. §§ 363(a) and 552(b)(1).

C. **City of Scottsdale**

12. The City of Scottsdale may assert that it holds a second position lien ("City Lien") in the Debtor's real and personal property by virtue of a Notice and Claim of Lien filed with the Arizona Secretary of State on October 13, 2009 at filing number 200915950680, identifying "REALTY EXECUTIVES/JAMES RIDGEWAY" as the debtors.

13. James Ridgeway is a real estate agent that formerly was employed by the Debtor. The Debtor believes that the address listed in the City Lien is or was Mr. Ridgeway's personal residence.

14. Based on conversations with the City of Scottsdale, the Debtor is informed and believes the City Lien is enforceable only against James Ridgeway.

15. The City Lien secures alleged unpaid sales taxes, penalty, interest and costs in the amount of $49,901.06. Under its terms, the City Lien is subordinate to all liens previously recorded or filed.

16. Upon information and belief, the Debtor's property is fully encumbered by Johnson Bank's prior-recorded, senior lien.

D. **Proposed Order**

17. The Debtor met with Johnson Bank and requested authority to use Cash Collateral. Based upon those discussions, the Debtor has prepared the Budget attached hereto as **Exhibit "A"** and a proposed order authorizing use of Cash Collateral ("Order") attached

-4-

hereto as **Exhibit "B."** Debtor believes that Johnson Bank will agree to its use of Cash Collateral under the terms set forth in the attached Order, which provides:

    a. The Debtor is authorized to use Cash Collateral to pay, within (±10%), the expenses categorized in the Budget and additional budgets that are furnished to and accepted by Johnson Bank. The Debtor shall not use Cash Collateral in which Johnson Bank asserts an interest except in the Debtor's ordinary course of business for actual and necessary expenses.

    b. The Debtor shall deposit all Cash Collateral into a segregated account, maintained as a debtor-in-possession account in the Debtor's name at Johnson Bank.

    c. Johnson Bank is granted a continuing, additional replacement lien and security interest ("Replacement Liens") pursuant to 11 U.S.C. §§ 361, 362 and 363, in all Cash Collateral, whether now or hereafter received by the Debtor, and all of Debtor's interest in and to all types of personal property.[1]

    d. All of the Debtor's revenues that are in excess of its expenses shall remain in the Debtor's debtor-in-possession account at Johnson Bank and shall remain the Cash Collateral of Johnson Bank.

    e. The Debtor makes monthly adequate protection payments in the amount of $2,167.00; the amount of the Debtor's pre-petition payments to Johnson Bank.

**E.    Future Operations**

18. The Debtor intends to submit its plan of reorganization and disclosure statement during the exclusivity period.

**III.    AUTHORIZATION TO USE CASH COLLATERAL**

By this Motion, the Debtor seeks emergency authorization to use the Cash Collateral to

---

[1] Which lien shall not attach to the Debtor's interests in the following trust accounts held for others: (i) Brokers Trust Account; (ii) Property Management Trust Account; (iii) REO Trust Account; and (iv) Commission Trust Account.

-5-

fund the Debtor's continuing business operations, including paying wages and salary to employees and agents as set forth in the Budget. The Debtor believes that Johnson Bank will agree to the Debtor's requested use of Cash Collateral based upon the terms of the Order and that no other party will assert an interest in Cash Collateral. Even if Johnson Bank does not consent to the Debtor's request, the Debtor's agreement to provide post-petition liens and periodic monthly payments provides Johnson Bank with adequate protection for its interest in the Cash Collateral as required by 11 U.S.C. § 361.

As set forth in the Budget, the Cash Collateral will be used to maintain the Debtor's business operations. Without immediate and interim use of the Cash Collateral, the Debtor will not have access to cash to pay its operating expenses, or employee wages and salaries. In that event, the Debtor's operations will cease, all ongoing business value will be lost and unsecured creditors will lose any prospect for payment. Accordingly, where the secured creditor is adequately protected for the use of its collateral, and where all other parties benefit from the Debtors continued operations, the Debtor should be permitted to use the Cash Collateral.

## IV. CONCLUSION

In consideration of the foregoing, the Debtor requests that the Court (i) set an emergency hearing to approve the interim use of cash collateral so that the Debtor may continue to pay its operating costs, (ii) enter the Order attached as Exhibit "B" permitting the interim use of cash collateral, (iii) set a final hearing on the Motion and the Debtor's request to utilize cash collateral, and (iv) grant such other relief as the Court deems appropriate.

DATED: April 30, 2011

**ALLEN, SALA & BAYNE, PLC**

/s/ PS 11693
Paul Sala
Michael A. Jones
1850 N. Central Ave. Suite 1150
Phoenix, Arizona 85004
Proposed Attorneys for the Debtor

/ / /

/ / /

COPY of the foregoing e-mailed this
30th day of April, 2011, to:

Edward K. Bernatavicius, Esq.
Office of the United States Trustee
230 North First Avenue, Suite 204
Phoenix, AZ 85003
e-mail: Edward.k.bernatavicius@usdoj.gov

/s/ Sherry Gomez